2023 IL App (1st) 211667-U
No. 1-21-1667

FIRST DIVISION
February 27, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DOUGLAS JONES, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAW OFFICES OF JEFFERY M. LEVING, LTD., | ) | No. 2020 L 001021 |
| | ) | |
| Defendant-Appellee). | ) | |
| | ) | The Honorable |
| | ) | Jerry A. Esrig, |
| | ) | Judge Presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Hyman concurred in the judgment.

**ORDER**

*Held*:     We affirm the trial court's order granting defendant's motion to dismiss plaintiff's legal malpractice action as barred by the applicable statute of limitations.

¶ 1    In this legal malpractice action, plaintiff-appellant Douglas Jones Brooks appeals from the circuit court order dismissing his second amended complaint against his former counsel, the Law Offices of Jeffery M. Leving, Ltd. ("Leving"). For the following reasons, we agree with the trial court that

Jones' action was not timely filed within the applicable two-year limitations period. Accordingly, we affirm.

¶ 2                                              BACKGROUND

¶ 3      This case stems from Leving's prior legal representation of Jones in proceedings to determine child support owed by Jones to his former spouse, Debra Jones (Debra).[1]

¶ 4      Jones commenced this action in January 2020, when he filed the original complaint against Leving. Jones alleged that, pursuant to a retainer agreement in July 2014, Leving represented him in connection with proceedings "involving issues of child support arrearages." Jones alleged that Leving breached the retainer agreement when its billings became "outrageous and excessive." In that pleading, Jones sought "disgorgement" of excessive and unreasonable fees. However, the original complaint did not enumerate any specific counts.

¶ 5      Jones was granted leave to file his first amended complaint, which he filed in August 2020. That pleading specified that the suit was a "legal malpractice" action and added an allegation that Leving "breached the standard of care by charging unreasonable and excessive fees." Jones' prayer for relief sought a judgment in the amount of $74,340.25, as well as a finding that Jones owed no further payments to Leving.

¶ 6      On September 21, 2020, Leving filed a "motion to strike and dismiss" the first amended complaint. Leving argued that the first amended complaint did not sufficiently plead the elements of a legal malpractice claim. Leving otherwise claimed that the first amended complaint was defective because it failed to plead separate counts for the separate causes of action, namely, legal malpractice and breach of contract for excessive fees.

---

[1] The record reflects the underlying proceedings were in the matter *In re Marriage of Debra B. Jones and Douglas A. Jones*, No. 91 D 5868, before Hon. Raul Vega.

¶ 7    Jones was granted leave to file a second amended complaint (SAC), which he filed on November 9, 2020. The SAC sets forth two separate counts, with count I entitled "legal malpractice" and count II entitled "Charging Unreasonable and Excessive Attorneys' Fees."

¶ 8    Within count I, Jones alleged that Leving breached its standard of care when it represented Jones at a "Petition for Rule to Show Cause hearing, wherein Jones's ex-spouse was requesting payment of child support." According to the SAC, Jones was represented at that hearing by two Leving attorneys, Ashley Isaacson and Catherine Delgadillo, with Delgadillo acting as Isaacson's "supervising attorney."

¶ 9    Jones alleged in the SAC that Leving's attorneys "failed to submit any evidence of proof of [child support] payments at the hearing." Specifically, Jones alleged that his counsel failed to submit documents constituting "proof of prior payments made by Jones in the amount of approximately $55,000.00, while his ex-wife was claiming only $3,000.00 was paid."

¶ 10   Jones alleged that at one point during the hearing, "even the Judge, when being handed a document by Leving, told Leving that it needed to be submitted into evidence first" but it was never submitted. Jones further claimed that at another point, he "held up a legal pad to advising attorney Catherine Delgadillo to 'please help' Ashley Isaacson during the hearing", but Delgadillo "failed to assist the young attorney."

¶ 11   Jones alleged that he was initially ordered to pay $6,954,37 to Debra for child support. Debra then filed a motion to reconsider, requesting an additional $52,661.33 in child support. According to the SAC, Debra's motion to reconsider was "based on the fact that there was no document evidence submitted by Leving at the hearing and Jones failed to meet his burden of proof."

¶ 12   Jones alleged that after Debra's motion to reconsider was filed, Leving "withdrew from the case, causing Jones to have to hire new counsel to defend" that motion. Debra's motion to reconsider

was ultimately granted on March 27, 2017, and Jones was ordered to pay approximately $60,000 in additional child support. The March 2017 order (a copy of which is in the record) specifies that "an additur for the sum of $52,661.33 with interest for child support is hereby granted to Debra."

¶ 13 Jones pleaded in the SAC that, "but for the actions and inactions of Leving, mainly failing to put into evidence proof of child support payments by Jones, Jones would not have had to pay $60,000.00 nor incur additional fees for retaining new counsel to attempt to fix Leving's mistakes." Jones alleged that "Leving was the proximate cause of Jones' damages in the amount of at least $85,000."

¶ 14 Count II of the SAC alleged various ways in which Leving "Charg[ed] Unreasonable and Excessive Attorneys' Fees", including by engaging in unnecessary work, using more attorneys than necessary, failing to accurately track time worked, and billing unreasonable amounts for tasks that should have been completed more quickly. Jones alleged that he was damaged by paying over $74,000 in fees for "bad lawyering" and sought disgorgement of fees that were "excessive, unreasonable, and for unnecessary work."

¶ 15 On January 22, 2021, Leving filed a motion to dismiss "pursuant to 735 ILCS 5/2-619 and in the alternative 735 ILCS 5/2-615." Leving primarily argued that Jones' claims were barred by the statute of limitations, warranting dismissal under section 2-619 of the Code of Civil Procedure.

¶ 16 Leving's motion acknowledged that Jones retained the firm in July 2014 to represent him in proceedings related to child support. Leving explained that Jones filed a "Petition for an Account Adjustment Review" seeking an order that Jones owed no child support arrearages, after which Debra filed a "Rule to show cause" alleging that Jones owed approximately $190,000 in child support and interest. Following discovery, the circuit court judge in the child support proceedings (Judge Vega) conducted a hearing. In March 2016, Judge Vega found that Jones owed child

support totaling $3,941, plus interest in the amount of $3,013.37. In April 2016, Debra filed a motion to reconsider.

¶ 17    Leving stated that after it filed a response to Debra's motion to reconsider, Leving moved to withdraw from representing Jones in the child support proceedings. Leving acknowledged that on March 27, 2017, Judge Vega granted Debra's motion to reconsider and found that Jones owed $52,661.33 in child support with interest.

¶ 18    Leving's motion to dismiss argued that Jones's lawsuit was barred by the statute of limitations, under which claims against attorneys for professional negligence must be brought "within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214/3(b) (West 2018). Leving contended that Jones knew or should have known of Leving's alleged negligence on March 27, 2017, when Judge Vega granted Debra's motion to reconsider and increased his child support liability to $52,661.33. Leving pointed out that Jones' original complaint was not filed until January 24, 2020, more than two years after the March 2017 order.

¶ 19    Apart from the statute of limitations, Leving's motion also averred that count II of the complaint should be dismissed for failure to state a cause of action, insofar as Jones "fail[ed] to plead actionable damages" regarding the allegedly excessive legal fees.

¶ 20    In his response to the motion to dismiss, Jones claimed that although he initiated the action more than two years after the March 2017 order, he did not become "reasonably aware of a claim for legal malpractice until he received a legal opinion from his attorney on January 26, 2018." Thus, he claimed the filing of the original complaint on January 24, 2020 was "timely filed within two years." Jones otherwise argued that there was at least a factual question as to when he became aware of his malpractice claim, precluding dismissal.

¶ 21    Alternatively, Jones argued that his time to initiate the action was extended under the fraudulent concealment statute. 735 ILCS 5/13-215 (West 2020) ("If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.") Jones alleged that after Debra filed the motion to reconsider in April 2016, Leving "assured Jones not to worry that they did everything correctly to present the child support arrearages," and Jones relied on that assurance. Jones further argued that the March 2017 order granting Debra's motion to reconsider was "not enough to trigger [Jones] to seek advice as to malpractice," as he and Leving were in a fiduciary attorney-client relationship. Jones alleged that the "fraudulent concealment by Leving tolls the statute of limitations by five years, until April 2021." That is, Jones suggested he had five years to commence the action from the time of Leving's purported false assurances in April 2016.

¶ 22    In support of these contentions, Jones attached an affidavit stating that he "did not become reasonably aware that I have a claim for legal malpractice until I received an opinion that I have a claim for legal malpractice from my current attorney on January 26, 2018." Elsewhere in the affidavit, Jones claimed that Leving "told me, after [Debra's] Motion to Reconsider the child support was filed, in April 2016 not to worry that the amount would not be changed, and they properly presented all of the evidence." He stated that he "trusted and relied on" these statements.

¶ 23    Elsewhere in the response, Jones argued that he sufficiently pleaded a cause of action for legal malpractice, as he "properly alleged that the excessive and unreasonable billing was a breach of the standard of care by Leving, *i.e.,* a breach of the retainer agreement."

¶ 24    In its reply, Leving maintained that Jones had reason to know of the injury upon the March 2017 order finding that Jones owed $52,661.33. Thus, Leving urged that the two-year limitation period

ran from that date. Insofar as Jones argued "fraudulent concealment," Leving pointed out that Jones relied on statements allegedly made to in in April 2016, almost a year *before* the adverse March 2017 ruling. Leving also pointed out that it ceased representing Jones in July 2016, well before the March 2017 order.

¶ 25 On November 22, 2021, the court entered an order dismissing both counts of the SAC as time-barred under the two-year limitation period in section 13-214.3(b) of the Code. 735 ILCS 5/13-214.3(b) (West 2020). Regarding count I, the court rejected Jones' contention that the limitations period did not begin to run until he received a legal opinion that he may have a legal malpractice action. The trial court stated that under the discovery rule, "the statute of limitations is triggered when the plaintiff knows or should know facts that would cause the plaintiff to believe that the injury was wrongfully caused, not when the plaintiff subjectively realizes he has a cause of action." The court agreed with Leving that "Jones knew or should have known of his alleged injury and that it was wrongfully caused on March 27, 2017, when Judge Vega granted the motion to reconsider and increased the amount of child support that Jones owed." The court noted that the March 2017 order "clearly states that Jones failed to meet his burden of proof to show that he had paid all of the child support he claimed * * * because he failed to introduce adequate evidence."

¶ 26 The trial court also found Jones' fraudulent concealment argument "unpersuasive", noting the alleged concealment "occurred in April 2016, which is approximately one year prior to Judge Vega's adverse order." The court noted that the "complained-of injury did not occur until Judge Vega's March 2017 order" and so any legal malpractice claim did not accrue until that time. In turn, the court reasoned that Leving "could not have concealed any cause of action" in April 2016 because "no cause of action existed" at that time. The court further remarked that when Judge Vega entered the order increasing Jones' liability, "Jones knew that Leving's prior statements were

incorrect." The court found that when the March 2017 order was entered, Jones knew of his injury and the statute of limitations was triggered, meaning the limitations period expired on March 27, 2019. Thus, the court dismissed the legal malpractice claim in count I.

¶ 27 Turning to count II, the court first concluded that this count stated a claim for breach of fiduciary duty independent of count I's malpractice claim, insofar as "the attorney's fiduciary role prohibits the attorney from charging excessive fees." Nonetheless, the court found that this claim was also subject to the two-year statute of limitations in section 13-214.3(b), which governs any action for damages "based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services." 735 ILCS 5/13-214.3(b).[2]

¶ 28 The trial court proceeded to explain that Jones had reason to know of this claim no later than the March 2017 order:

> "[T]he SAC indicates that Leving withdrew from representing Jones
> after the motion to reconsider was filed but prior to Judge Vega's
> March 27, 2017 ruling grant the motion. [Citation.] Again, Jones
> does not allege or offer evidence that he was not aware of excessive
> billing as it occurred. Certainly, with Judge Vega's ruling on the
> motion to reconsider, Jones knew that Leving's services had been
> unproductive, and, in that sense, excessive. *** Thus, Jones' cause
> of action accrued no later than the date Judge Vega issued his ruling
> on the motion to reconsider, which was long after the fees were
> billed and long after Leving ceased representing and billing Jones.

---

[2] The trial court noted this statute has been applied to a breach of fiduciary duty claim against an attorney, citing *Scheinblum v. Schain Banks Kenny & Schwartz, Ltd.*, 2021 IL App (1st) 200798, ¶ 23.

As a result, the two-year statute of limitations period pertaining to Count II begin to run, at the latest, when Judge Vega issued his decision on the motion to reconsider."

Because Jones filed the action more than two years after the March 2017 order, the court concluded that "[c]ount II is also-time-barred by the section 13-214.3(b) statute of limitations." The court thus dismissed both counts I and II of the SAC, noting that its decision was a final order.

¶ 29 Jones filed a timely notice of appeal from the dismissal order.

¶ 30 ANALYSIS

¶ 31 On appeal, Jones asserts that either the discovery rule or the fraudulent concealment statute precluded the trial court from dismissing the action as time-barred. With respect to the discovery rule, Jones asserts that there was at least a question of fact precluding dismissal, or that he had "at least until January 28, 2020 to file his Complaint", because he did not receive a legal opinion about his cause of action until January 2018. He alternatively argues that Leving's fraudulent concealment in April 2016 extended his time to file an action until at least April 2021, or that he at least raised a question of fact as to the alleged fraudulent concealment that precluded dismissal.

¶ 32 For the following reasons, we reject Jones's arguments and affirm the trial court.

¶ 33 Standard of Review

¶ 34 Under section 2-619(a)(5) of the Code of Civil Procedure, dismissal is warranted if the "action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2020). "A motion to dismiss under section 2-619 of the Code admits the legal sufficiency of the complaint and asserts an affirmative matter outside the pleading that avoids the legal effect of or defeats the claim. [Citation.]" *Osten v. Northwestern Memorial Hospital*, 2018 IL App (1st) 172072, ¶ 11. In ruling on such a motion, "we accept as true all well-pleaded facts in plaintiff's complaint and draw

all reasonable inferences in plaintiff's favor. [Citation.]" *Id.* We review *de novo* the circuit court's ruling granting a section 2-619 motion to dismiss. *Moon v. Rhode*, 2016 IL 119572, ¶ 16.

¶ 35　　The Discovery Rule Did Not Preclude Dismissal

¶ 36　We first address Jones' arguments that the discovery rule precluded dismissal of his lawsuit as untimely. The parties do not dispute that the applicable statute of limitations for both counts of the SAC is section 13-214.3(b) of the Code, which states: "An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services * * * must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2020)

¶ 37　 This action was not commenced until January 2020, more than two years after the March 2017 order that granted Debra's motion to reconsider and ordered Jones to pay an additional "sum of 52,661.33 with interest for child support." Nonetheless, Jones relies on the discovery rule to contend that dismissal was improper because there was at least an issue of fact as to when he knew or reasonably should have known that he had a cause of action.  He notes that in his affidavit, he averred that he first became aware of a legal malpractice claim against Leving on January 26, 2018, when he received an opinion to that effect from his current counsel. He thus asserts he raised a question of fact as to when he discovered his cause of action, and this factual question precluded dismissal.

¶ 38　Jones further argues that, "under the discovery rule, Jones would have had two years from the date that he discovered his claim for malpractice to file." Thus, Jones asserts that he had to file his complaint by January 26, 2020, *i.e.,* two years after he received a legal opinion that he had a claim against Leving. For the following reasons, his argument are without merit.

¶ 39    The statute of limitations in section 13-214.3(b) "incorporates the discovery rule, which delays commencement of the statute of limitations until the plaintiff knows or reasonably should have known of the injury and that it may have been wrongfully caused.'" (Internal quotation marks omitted.) *Carlson v. Fish*, 2015 IL App (1st) 140526, ¶ 24. Under this rule, "the statute of limitations begins to run when the injured party has a reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue." (Internal quotation marks omitted.) *Scheinblum v. Schain Bank Kenny & Schwartz*, 2021 IL App (1st) 200798, ¶ 24.

¶ 40    Significant for this appeal, "[u]nder the discovery rule, 'a statute of limitations may run despite the *lack* of actual knowledge of negligent conduct." (Emphasis in original). *Id.* ¶ 25 (quoting *SK Partners I, LP*, v. *Metro Consultants, Inc.,* 408 Ill. App. 3d 127, 130); *Carlson*, 2015 IL App (1st) 140526, ¶ 23 ("actual knowledge of the alleged malpractice is not a necessary condition to trigger the running of the statute of limitations. [Citations.]). This court has explained:

> "Knowledge that an injury has been wrongfully caused 'does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action.' [Citation.] A person knows or reasonably should know an injury is 'wrongfully caused' when he or she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. [Citation.]" *Carlson*, 2015 IL App (1st) 140526, ¶ 23.

¶ 41     As to the question of "injury," our supreme court has held that the injury in a legal malpractice action is not "the attorney's negligent act itself" but is a "pecuniary injury * * * caused by the lawyer's negligent act or omission." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005). Thus, "[f]or purposes of a legal malpractice action, a client is not considered to be injured unless and until he has suffered a loss for which he may seek monetary damages." *Id.*

¶ 42     With this in mind, we turn to Jones' contention that he raised a question of fact regarding the discovery rule that precluded dismissal. Jones is incorrect, as the undisputed facts show he was on notice by March 2017.

¶ 43     We recognize that " '[t]he time at which a party has or should have the requisite knowledge under the discovery rule to maintain a cause of action is ordinarily a question of fact.' " *Blue Water Partners, Inc. v. Edwin D. Mason, Foley and Lardner*, 2012 IL App (1st) 102165, ¶ 48. That is, "[u]sually, the time a plaintiff knows or reasonably should have known about an injury and that it was wrongfully caused presents a question of fact. [Citation.]" *Scottsdale Ins. Co. v. Lakeside Community Committee*, 2016 IL App (1st) 141845, ¶ 26. Importantly, however, "[w]here it is apparent from the undisputed facts only one conclusion can be drawn, the question becomes one for the court [citation] and can be resolved as a matter of law, making a section 2-619 dismissal on statute of limitations ground appropriate. [Citations.]" *Id.*; see also *Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989, ¶ 13 ("When a party knew or reasonably should have known his or her injury was wrongfully caused raises a question of fact, unless only one conclusion can be drawn at some particular point from undisputed facts. [Citation.]"); *Blue Water Partners*, 2012 IL App ( 1st) 102165 ¶ 49 (recognizing summary judgment dismissing legal malpractice claim appropriate "if the undisputed facts compel the conclusion that the statute of limitation

lapsed"). These cases show that dismissal is proper if the undisputed facts show that the plaintiff reasonably should have known of his legal malpractice injury more than two years before commencing the action.

¶ 44    Jones suggests that he raised an issue of fact under the discovery rule because his affidavit stated that he did not "bec[o]me aware" of his claim until he received a legal opinion in January 2018. Jones' argument is flawed, as he focuses on when he gained *actual* knowledge of his claim by obtaining a legal opinion. Yet, the law is clear that "actual knowledge of the alleged malpractice is not a necessary condition to trigger the running of the statute of limitations. [Citations.]). *Carlson*, 2015 IL App (1st) 140526, ¶ 23. That is, Jones's argument ignores that the discovery rule only tolls the limitation period "to the time when a person knows *or reasonably should know* of his or her injury." (Emphasis added.) *Blue Water Partners,* 2012 IL App (1st) 102165 ¶ 48. Thus, even assuming he first gained actual knowledge of his claim as of January 2018, that does not mean he lacked reason to know of it at an earlier time.

¶ 45    We agree with the trial court that under the undisputed facts, Jones reasonably should have known of his claim upon entry of the March 2017 order finding him liable for additional child support. We reiterate that the two-year limitation period began to run when Jones knew or reasonably should have known of the injury and that it may have been wrongfully caused., *i.e.,* when he "possesse[d] sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. [Citation.]" *Carlson*, 2015 IL App (1st) 140526, ¶ 23. Here, the March 2017 order put Jones on notice of both the alleged injuries and their cause.

¶ 46    We first explain why Jones was on notice of his injuries by the March 2017 order. We keep in mind that, "[f]or purposes of a legal malpractice action, a client is not considered to be injured

unless and until he has suffered a loss for which he may seek monetary damages." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005).

¶ 47    Jones alleged two forms of injury in the SAC. First, count I alleged that he was ordered to pay his additional child support because Leving failed to properly submit evidence of his prior support payments. In count II, Jones alleged that he was damaged by paying Leving excessive and unreasonable attorneys' fees "for representation obtaining little or no benefit." The undisputed facts show he was on notice of both types of injury, as of the March 2017 order.

¶ 48    Regarding the first form of alleged injury—the increased child support award—we agree with the trial court that the March 2017 order included sufficient information about the injury and its cause to "put a reasonable person on inquiry to determine whether actionable conduct is involved. [Citation.]" *Carlson*, 2015 IL App (1st) 140526, ¶ 23. The March 2017 order explained that the court awarded Debra additional child support because Jones "failed to meet his burden of proof to show that he had paid all of the child support that he alleged he had paid" and "failed to introduce into evidence any documents" showing his past support payments. Count I of the SAC is premised on Leving's failure to introduce that same evidence. In other words, the March 2017 order apprised Jones of both the "injury" (increased child support obligations) and its cause (Leving's failure to introduce evidence of past payments) that are the basis for count I.[3]

¶ 49    The same is true with respect to the injury alleged in count II—the excessive and unreasonable attorneys' fees Jones paid to Leving. There can be no factual dispute that, by the time of the March

_____

[3] Although the March 2017 order was sufficient to put Jones on notice, we agree with the trial court that the SAC's allegations further indicate that Jones was already aware that Leving failed to properly introduce evidence at the hearing on Debra's petition. Specifically, Jones alleged that during the hearing, "the Judge, when being handed a document by Leving, told Leving that it need to be submitted into evidence" but Leving failed to do so. Jones also alleged that at one point he "held up a legal pad to advising attorney Catherine Delgadillo to 'please help' Ashley Isaacson during the hearing." Thus, Jones' allegations reflect that from the time of the hearing, he believed that Leving failed to properly submit evidence on his behalf.

2017 order, Jones knew of these damages and that that they were wrongfully caused. Significantly, the SAC pleads that these damages were incurred *before* the end of Leving and Jones' attorney-client relationship. Count II states: "During the following years *prior to the termination of representation* the billings became outrageous and excessive and *by the time of the breakdown in the relationship* Jones had paid Leving in excess of eighty thousand dollars ($80,000.00) for representation obtaining little or no benefit ***." (Emphases added).

¶ 50 Further, once the March 2017 order was entered, Jones had reason to know that Leving's representation was (as alleged in the SAC) of "little or no benefit." As discussed, the order explicitly stated that Jones's child support liability was being increased because he had not met his burden to submit evidence of prior payments. That is, once the order was issued, Jones was on notice that he had not obtained effective representation from Leving, despite having paid tens of thousands of dollars in legal fees.

¶ 51 In short, as of the March 2017 order, Jones had reason to know of his alleged injuries and that such injuries were wrongfully caused by Leving's representation. The limitations period began at that time, regardless of whether Jones yet had actual knowledge of a malpractice claim. See *Janousek*, 2015 IL App (1st) 142989, ¶ 13.

¶ 52 We thus reject Jones' suggestions that (1) dismissal was precluded by a "question of fact that was raised by the discovery rule" or that (2) the two-year limitations period did not begin to run until he received a legal opinion in January 2018. The trial court correctly determined that under the discovery rule, Jones "knew or should have known of the complained-of injur[ies] when Judge Vega issued his March 27, 2017 order granting the motion to reconsider." That is, Jones had to commence the action within two years, *i.e.*, by March 27, 2019. He did not do so.

¶ 53 Jones' Fraudulent Concealment Argument Is Without Merit

¶ 54 We turn to address Jones' alternative contentions that dismissal was improper, given Leving's alleged fraudulent concealment of his legal malpractice claim.[4] He argues that under the fraudulent concealment statute, he had a five-year period to commence the action, beginning from either the time Leving made "concealing statements" in April 2016, or from the time that he "became aware of his claim" when he received a legal opinion in January 2018. Thus, Jones argues he had until either April 2021 or January 2023 to commence the action, such that his January 2020 filing was timely. Jones otherwise argues that the "issue of fraudulent concealment is a factual question" and so the trial court should have found that questions of fact precluded dismissal.

¶ 55 Leving responds that the trial court correctly found that fraudulent concealment could not be premised on its statements to Jones in April 2016, since the legal malpractice injury did not occur until the March 2017 order. Leving asserts fraudulent concealment is "logically impossible" because statements made in April 2016 "could not fraudulently conceal a claim that did not exist until March 27, 2017." Leving points out that Jones has not alleged any concealment by Leving after April 2016.

¶ 56 Leving otherwise argues that Jones cannot rely on fraudulent concealment because Jones admittedly knew of his legal malpractice claim when he received a legal opinion in January 2018, well before the 2-year limitation period expired in March 2019. Because Jones still had ample time to comply with the statute of limitations, Leving asserts he should not be able to claim

---

[4] We note that Jones does not differentiate between count I and count II in discussing fraudulent concealment. However, his allegations of fraudulent concealment are clearly directed only to the legal malpractice claim in count I, which is based on the March 2017 order increasing Jones' child support obligation after Leving's allegedly negligent representation. That is, Jones alleges that Leving assured him "not to worry that the amount would not be changed, and [Leving] properly presented all of the evidence." That assurance proved to be false when the March 2017 order increased the amount of child support. Jones has not alleged that Leving fraudulently concealed the legal fees that are the basis of count II.

fraudulent concealment to excuse his failure to timely commence the action. We find Leving's arguments persuasive.

¶ 57 The fraudulent concealment statute provides: "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13-215 (West 2020).

¶ 58 Generally, one alleging fraudulent concealment must show affirmative acts "designed to prevent the discovery of the action." *Carlson*, 2015 IL App (1st) 140526, ¶ 44. In other words, a claimant generally must show " 'affirmative acts or representations [by a defendant] that are calculated to lull or induce a claimant into delaying filing his [or her] claim or to prevent a claimant from discovering his [or her] claim.' " *Id.* (quoting *Barrat v. Goldberg*, 296 Ill. App. 3d 252, 257 (1998)). The plaintiff "must plead and prove that the defendant made misrepresentations or performed acts which were known to be false, with the intent to deceive the plaintiff, and upon which the plaintiff detrimentally relied." (Internal quotation marks omitted.) *Doe v. Boy Scouts of America*, 2016 IL App (1st) 152406, ¶ 81.

¶ 59 There is an exception to this rule where the parties have a fiduciary relationship. *Id*. That is, a fiduciary "who is silent, and thus fails to fulfill his duty to disclose material facts concerning the existence of a cause of action, has fraudulently concealed that action, even without affirmative acts or representations. *Id.* (quoting *DeLuna v. Burciaga,* 223 Ill. 2d 49, 77 (2006)). Our supreme court has held that the attorney-client relationship constitutes a fiduciary relationship. *DeLuna*, 223 Ill. 2d at 246 (recognizing that attorneys have an obligation to apprise clients as to developments in their cases).

¶ 60 Nonetheless, this court has declined to hold that attorneys have a duty to tell their clients about potential malpractice claims against them. *Carlson*, 2015 IL App (1st) 140526, ¶ 45 (finding plaintiff's "reliance on *DeLuna* for the proposition that defendant had a duty to affirmatively advise him to pursue a legal malpractice action is misplaced," noting that plaintiff failed to cite any "case holding that a lawyer has an affirmative obligation to advise a client to sue the attorney."). Thus, to the extent Jones' brief suggests "the failure of Leving to speak up as to its wrongdoing is also evidence of fraudulent concealment," there is no support for that contention. Yet, that does not resolve whether Leving's purported April 2016 assurances to Jones about his child support obligation could have constituted fraudulent concealment that extended Jones' time to sue for legal malpractice.

¶ 61 Significantly, courts will not apply fraudulent concealment where " 'the claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within the remaining limitations period.' " *Maurer v. Rubin*, 401 Ill. App. 3d 630, 649 (2010) (quoting *Smith v. Cook County Hospital*, 164 Ill. App. 3d 857, 862 (1987)). "[W]here a plaintiff has been put on inquiry as to a defendant's fraudulent concealment within a reasonable time before the ending of the statute of repose, such that he should have discovered the fraud through ordinary diligence, he cannot later use fraudulent concealment as a shield in the event that he does not file suit within the statutory period." *Mauer*, 401 Ill. App. 3d at 649; see also *Turner v. Nama*, 294 Ill. App. 3d 19, 28 (1997) ("because decedent should have discovered the concealment through ordinary diligence, and a reasonable time [eight months] remained within the limitations period, the fraudulent concealment exception does not apply.").

¶ 62 Likewise, fraudulent concealment will not apply if the record shows plaintiff "actually knew of their cause of action" within the statutory limitation period. *Witt v. Jones & Jones Law Offices,*

*P.C.*, 269 Ill. App. 3d 540, 544 (1995). In *Witt*, plaintiffs sued attorneys who drafted a decedent's will, claiming the will did not reflect decedent's intent to leave more to them. *Id.* at 542. The trial court dismissed the action as barred by the statute of limitations, under which plaintiff had to file suit by April 24, 1992. *Id.* at 543. On appeal, this court held that plaintiffs could not rely on fraudulent concealment where plaintiffs gained knowledge of their cause of action, either through "consultation of an attorney" in November 1991, or from the January 1992 order confirming the will*Id*. at 544-45. Since "[b]oth dates fall within the limitations period" ending in April 1992, "even if defendants had taken action constituting fraudulent concealment *** plaintiff had actual knowledge of that which they accused defendant of attempting to conceal." *Id*. at 545.

¶ 63 Given the above authorities, we find that under the undisputed facts, fraudulent concealment did not apply to postpone Jones' time to commence his action. There are two independent reasons that lead to this conclusion.

¶ 64 First, we agree with the trial court that the alleged assurances in April 2016 could not have constituted fraudulent concealment, because at that time Jones's legal malpractice claim had not accrued. A legal malpractice cause of action "does not accrue until a plaintiff discovers, or within a reasonable time should discover his injury and incurs damages directly attributable to counsel's neglect. [Citation.]" *Lucey*, 301 Ill. App. 3d at 353 ("Where the mere possibility of harm exists or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists. [Citation.]"). The injury underlying Jones's legal malpractice claim was the increased amount of child support awarded in the March 2017 order. That is, Jones' legal malpractice cause of action had not accrued when Leving allegedly assured him in April 2016 that the amount he owed would not increase. As the trial court recognized, those assurances could not have fraudulently concealed a cause of action that did not yet exist.

¶ 65    Secondly, Jones' fraudulent concealment argument fails for another reason. The undisputed facts demonstrate that Jones knew or should have known of the alleged fraudulent concealment and his potential malpractice claim long before the expiration of the statute of limitations in March 2019. Indeed, he has explicitly averred that he was informed of the claim over one year earlier. Therefore, he cannot rely on fraudulent concealment.

¶ 66    As discussed with respect to the discovery rule, the March 2017 order put Jones on notice that Leving did not adequately present evidence on his behalf to limit his child support obligation. Once the adverse March 2017 order was entered, Jones had reason to know that Leving's alleged assurances that the child support amount would not be increased had proven to be false.  See *Mauer*, 401 Ill. App. 3d at 649 "[W]here a plaintiff has been put on inquiry as to a defendant's fraudulent concealment within a reasonable time before the ending of the statute of repose *** , he cannot later use fraudulent concealment as a shield in the event that he does not file suit within the statutory period.")

¶ 67    Perhaps more significant, Jones attested in his affidavit in opposition to the motion to dismiss that on January 26, 2018, he received a legal opinion that he had a legal malpractice claim against Leving. That is, Jones concedes he had *actual knowledge* of a claim by late January 2018. This was more than one year before the limitations period expired in March 2019 (*i.e.*, two years from the adverse March 2017 order). Jones had more than a reasonable amount of time to file the action despite any alleged false assurances. Given his acknowledgement of when he was informed of his potential claim against Leving, he cannot rely on the allegedly fraudulent April 2016 assurances to excuse his failure to timely commence this action.

¶ 68    We note that these facts clearly distinguish this case from *Rajcan v. Donald Garvey Associates, Ltd.*,  347 Ill. App. 3d 403 (2004), relied upon by Jones. There, plaintiffs were siblings who sued

the attorneys who prepared trust documents for their late father, alleging the attorneys were negligent in failing to establish a "special needs" trust for the siblings with disabilities. Plaintiffs alleged that they repeatedly asked one of the attorneys for a copy of the trust agreement, and he "assured them that he would do so" when he had no intention of doing so but "withheld it to conceal his prior negligence." *Id*. at 406. The trial court granted defendants' motion to dismiss the action as barred by the six-year statute of repose for legal malpractice actions. *Id*.

¶ 69    On appeal, the Second District found that the complaint adequately alleged fraudulent concealment precluding dismissal, as the "alleged false assurances *** were affirmative acts that could have assuaged plaintiffs who might otherwise have been more assertive in attempting to obtain and examine a copy of the trust agreement." *Id*. at 408. Jones suggests that we should rely on *Rajcan* to find that Leving's fraudulent concealment extended his time to file a claim.

¶ 70    Significantly, however, the Second District included the following caveat:

> "It bears emphasis that, as framed by the parties, the only issue
> before this court is whether plaintiffs have alleged fraudulent
> concealment. It does not necessarily follow, however, that the
> statute of repose must be extended. *Courts have declined to apply*
> *the fraudulent concealment doctrine where the claimant discovers*
> *the fraudulent concealment or should have discovered it through*
> *ordinary diligence and a reasonable time remains before the repose*
> *period expires*. [Citation.] It is arguable, perhaps that Garvey's
> repeated failure to honor the requests for the documents should have
> put plaintiffs on inquiry as to fraudulent concealment by November
> 1998 or earlier. As of November 1998, there remained about a year

to file suit under the statute of repose. This was, as a matter of law, a reasonable amount of time. [Citation.] *However, because the issue is not properly before this court, we need not decide it*." (Emphases added.) *Id.* at 408-09.

¶ 71    Thus, *Rajcan* did not undermine the principle that fraudulent concealment will *not* shield a plaintiff who discovers or was on notice of such concealment with a "reasonable amount of time" left to file under the applicable statute.

¶ 72    Jones' own allegations and affidavit establish that: (1) he was on notice from entry of the March 2017 order that his child support liability increased despite any contrary assurances by Leving in April 2016, and (2) he received a legal opinion in January 2018 that he had a legal malpractice cause of action against Leving. Under the undisputed facts, fraudulent concealment did not apply to extend his time to commence this action. The filing of his original complaint more than two years after the March 2017 order was untimely, and the trial court properly dismissed this action as time-barred.

¶ 73                                    CONCLUSION

¶ 74    In summary, Jones' arguments regarding the discovery rule and fraudulent concealment are without merit. The trial court correctly concluded that Jones failed to commence this action within the two-year statute of limitations period under section 13-214.3(b) of the Code. 735 ILCS 5/13-214.3(b) (West 2020). Accordingly, the court properly granted Leving's motion to dismissal the action as untimely.

¶ 75    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 76    Affirmed.